**Harry A. WELLONS, Jr., M.D., S.C., Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

Nos. 93–2991, 93–2992.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 7, 1994.

Decided Aug. 4, 1994.

David J. Duez (argued), Roger W. Wenthe, McDermott, Will & Emery, Chicago, IL, for appellant.

David L. Jordan, I.R.S., Gary R. Allen, Kenneth L. Greene, Thomas J. Clark (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, James S. Stanis, Chicago, IL, for appellee.

Before CUDAHY and COFFEY, Circuit Judges, and NORGLE, District Judge.*

CUDAHY, Circuit Judge.

Cardiovascular surgeon Dr. Harry A. Wellons, Jr. set up a severance pay plan for his employees in 1983. Dr. Wellons contributed $194,000 to the trust for the plan in 1984 and again in 1985, and deducted these amounts from his income taxes as a business expense under 29 U.S.C. § 162. The IRS disallowed the deductions on the grounds that the payments were made to a deferred compensation plan within the meaning of 26 U.S.C. § 404(a) and were not deductible. The Tax Court agreed. We affirm.

* The Honorable Charles R. Norgle, Sr., of the United States District Court for the Northern District of Illinois, is sitting by designation.

## I.

On July 1, 1984, Dr. Wellons adopted the Harry A. Wellons, Jr., M.D., S.C. Employee Benefit Plan and Trust Agreement (the plan).[1] All employees were eligible to enroll. The plan provides a severance benefit to plan members upon termination of their employment after five years with Dr. Wellons. The amount of the benefit payable under the plan is dependent on several factors including the number of years a member has served with Dr. Wellons and the member's rate of compensation. A plan member who terminates employment with Wellons is entitled to a benefit equaling twenty-one weeks of average weekly compensation for each year of service. The maximum benefit that a member can receive is two times her annual salary for the year immediately preceding termination. Payments of benefits must be made within twenty-four months of the employee's severance. A member may forfeit her benefits if she is terminated because of dishonesty or fraud, or if she leaves to take a leave of absence or to convert to part-time employment. When the plan first became effective, only Dr. Wellons and his wife, Florence L. Wellons, were members, but two others joined in 1985.

The plan was funded through a trust which required Dr. Wellons to contribute an amount sufficient to provide for the expected benefits. No employees terminated their employment with Dr. Wellons during the relevant period; so no benefits were paid. In both 1984 and 1985, Dr. Wellons contributed $194,000 to the plan. Dr. Wellons claimed both contributions as deductions on his corporation's income tax returns as ordinary and necessary business expenses for the fis-

cal years ending June 30, 1984, and June 30, 1985.

The Commissioner refused to allow the deductions, claiming that the plan in question was not deductible under 26 U.S.C. § 162,[2] but rather was a deferred compensation plan as defined in 26 U.S.C. § 404(a),[3] under which payments are deductible only in the years when benefits are actually paid. The Tax Court determined that the Wellons plan was a deferred compensation plan and that, pursuant to 26 U.S.C. § 404(a)(5),[4] deductions could not be made until the benefits were actually paid.

## II.

If the Wellons plan is a deferred compensation plan, then payments are not deductible, 26 U.S.C. § 404(a)(5); if it is something other than a deferred compensation plan, such as a welfare benefit plan, the payments are deductible as an ordinary business expense. 26 U.S.C. § 162. "The general characterization of a transaction for tax purposes is a question of law subject to review. The particular facts from which the characterization is to be made are not so subject." *Frank Lyon Co. v. United States,* 435 U.S. 561, 581 n. 16, 98 S.Ct. 1291, 1302, 55 L.Ed.2d 550 (1978); *see also Nickerson v. Commissioner,* 700 F.2d 402, 405 (7th Cir. 1983). Thus we review the Tax Court's characterization of the plan de novo.

As a general rule, § 162 allows an income tax deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162. Section 404(a) carves out an exception to § 162 for

---

1. Dr. Wellons set up a corporation, also called Harry A. Wellons, Jr., M.D., S.C., that actually established the plan and is the petitioner in this case. We refer to the surgeon and the corporation interchangeably.

2. Section 162(a) provides: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

3. Prior to 1986, section 404(a) provided: "If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or ac-

crued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162."

4. Section 404(a)(5) limits deductions where "the plan is not one included in paragraph (1), (2), or (3), in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan, but, in the case of a plan in which more than one employee participates only if separate accounts are maintained for each employee."

contributions to a "stock bonus, pension, profit-sharing, or annuity plan … or a plan deferring the receipt of such compensation." 26 U.S.C. § 404(a). Contributions to a deferred compensation plan are deductible only "in the taxable year in which an amount attributable to the contribution is includible in the gross income of employees participating in the plan." 26 U.S.C. § 404(a)(5).

The Code itself does not define "a plan deferring the receipt of compensation."[5] The Treasury Regulations promulgated under §§ 162 and 404 offer some clues. Under 26 C.F.R. § 1.162–10(a) (1993), "amounts paid or accrued within the taxable year for dismissal wages, unemployment benefits, guaranteed annual wages, vacations, or a sickness, accident, hospitalization, medical expense, recreational, welfare, or similar benefit plan" are deductible under § 162. Dr. Wellons argues that since his plan provides both dismissal wages and welfare benefits, it is deductible under § 162. But the regulations also provide that contributions to dismissal or welfare benefit plans are not deductible under § 162 "if, under any circumstances, they may be used to provide benefits under a … deferred compensation plan of the type referred to in § 404(a)." 26 C.F.R. § 1.162–10(a). Since, for reasons explained more fully below, the Wellons plan at least in some circumstances, appears to be a deferred compensation plan, we must analyze this case under § 404(a) and related regulations.

The regulations under § 404 likewise distinguish between welfare benefit plans and deferred compensation plans that share some of the characteristics of welfare benefit plans. Section 404(a) does not apply to contributions to a plan that is "*solely* a dismissal wage or unemployment benefit plan, or a sickness, accident, hospitalization, medical expense, recreation, welfare, or similar benefit plan, or a

combination thereof." 26 C.F.R. § 1.404(a)–1(a)(2) (emphasis supplied). The regulations give an example: "[I]f under a plan an employer contributes 5 percent of each employee's compensation per month to a fund out of which employees who are laid off will be paid benefits for temporary periods, but employees who are not laid off have no rights to the funds, such a plan is an unemployment benefit plan." § 1.404(a)–1(a)2. Wellons argues, that if his plan is a welfare benefit plan, the game is over and he wins: the contributions are not subject to the limitations of § 404(a)(5). But on its face, the regulation exempts only those plans that are nothing *more* than welfare or other enumerated plans. Wellons' plan operates somewhat differently, in that payments are made to all employees after a certain period of time, regardless of the reason for termination. Moreover, the regulations go on to provide that, when a plan has features of both a welfare benefit and a deferred compensation plan, the entire plan is evaluated under § 404(a). 26 C.F.R. § 1.404(a)–1(a)(3).

■ The central question in applying these regulations, then, is whether Dr. Wellons' plan has any features of a deferred compensation plan, or whether it is solely a welfare benefit plan. On its face, Wellons' plan seems more akin to a pension plan than to a plan providing benefits corresponding to those listed alongside "welfare" benefits in 26 C.F.R. § 1.404(a)–1(a)(2). The instant plan is most akin to an arrangement providing either dismissal wages or unemployment benefits, but even these categories are obviously intended to apply narrowly in limited circumstances, and these plans operate more as insurance in case of a contingent event than as a guarantee of income upon a certain event. Wellons plan, by contrast, covers all employees who leave his employment for whatever reason. Similar to a pension plan,

---

**5.** Nor does it define "welfare benefits." Wellons argues that ERISA regulations concerning severance pay have been adopted into the Tax Code and are controlling here. Under the ERISA regulations, "severance benefit plans" are not subject to the same restrictions as pensions. 26 C.F.R. § 2510.3–2(b). But even if these ERISA regulations were actually controlling or were merely useful analogies, they are beside the point here. Under the tax code, the appellation "wel-

fare benefit" does not remove a plan from the deduction rules of § 404. Rather, we must still determine whether the welfare benefit could also be characterized as a deferred compensation plan. Likewise, Wellons' argument that contributions to VEBA trusts are deductible is unavailing. VEBA trusts are governed by comprehensive rules on deductibility; the only issue before the Tax Court and this court concerns the application of § 404.

the benefits vest after five years of employment and are commensurate with salary and length of service. The Tax Court has previously found these to be the hallmarks of plans subject to § 404. *New York Seven–Up Bottling Co. v. Commissioner,* 50 T.C. 391, 1968 WL 1531 (1968); *Grant–Jacoby, Inc. v. Commissioner,* 73 T.C. 700, 715, 1980 WL 4499 (1980) (held that an educational benefit plan for children of employees was governed by § 404 rather than § 162); *New York Post Corp. v. Commissioner,* 40 T.C. 882, 1963 WL 1423 (1963) (contributions made under severance pay provision of union contract deductible under § 404). The severance pay plan at issue in *New York Bottling Co.* provided any terminated employee who had served more than five years with one week of pay for each year of service. The Tax Court held that this plan fell within the scope of § 404(a), and the employer could not deduct unpaid liability. The Tax Court could have been describing the Wellons plan when it remarked "the plan in *New York Seven–Up* was similar to a pension plan in that the right to receive benefits vested after a certain term of employment, the extent of benefits was related to years of service, and the receipt of benefits by the employee would not begin until after termination of his employment." *Latrobe Steel Co. v. Commissioner,* 62 T.C. 456, 467, 1974 WL 2696 (1974).

In *Latrobe Steel,* the Tax Court narrowed the application of § 404(a) to deferred compensation plans which are *similar* to pension, profit-sharing, stock bonus, or annuity plans. Congress effectively reversed *Latrobe Steel* by amendment in 1978. Prior to the amendment, the deduction rules of § 404(a) applied to pensions or "similar" deferred compensation plans. 26 U.S.C. § 404(b) (1978).[6] The amended code applies § 404(a) to pensions or

"other" deferred compensation plans. 26 U.S.C. § 404(b). The House Report makes clear that the amendment intended to maintain the broad coverage of § 404: "the bill clarifies current law by providing that a method of compensation or employer contributions having the effect of a plan deferring the receipt of compensation does not have to be similar to a stock bonus, pension, profit-sharing, or annuity plan to be subject to the deferred deduction timing rules." H.R.Rep. No. 95–1445, 95th Cong., 2d Sess., at 61, *reprinted in* 6 U.S.C.C.A.N. at 7098 (1978).[7] There may often be some overlapping features in welfare benefit plans and deferred compensation plans. But the regulations very clearly direct us in those circumstances to apply § 404(a), including § 404(a)(5)'s limitations on deductions. The Wellons plan is more akin to a deferred compensation plan than the sort of "welfare benefits" arrangement contemplated by the regulations. We therefore agree with the Tax Court that contributions to the plan are governed by § 404(a), and that the Commissioner properly disallowed the deduction under § 404(a)(5). The decisions of the Tax Court are therefore AFFIRMED.

---

**6.** Wellons also claims that the Tax Court quoted the wrong version of 26 U.S.C. § 404(b) in its opinion. An earlier version of § 404(b) should have applied to the 1984 tax year, while the version quoted by the Tax Court would only have applied to 1985. But this argument is not germane—§ 404(b) has no relevance to this case, but was merely quoted to make a different point. The Tax Court never "applied" this provision to this case.

**7.** Wellons points to the legislative history of the 1985 Code amendments, involving years subsequent to the years at issue here, to support his argument that welfare benefit plans are required to be accorded favorable treatment under the Code. *See* 26 U.S.C. §§ 419–419A. Neither section of Title 26 is applicable here; nor do the general statements that Congress intended to treat welfare benefits favorably and that Congress considered severance pay along with welfare benefits illuminate the narrow questions posed by this case.