T.C. Memo. 2016-55

UNITED STATES TAX COURT

JOHN J. MACHACEK, JR. AND MARIANNE MACHACEK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

BRENDA S. JONES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 12701-11, 5147-13.          Filed March 28, 2016.

Allen James White, for petitioners.

Angela B. Reynolds, David Weiner, and Kathryn E. Kelly, for respondent.

MEMORANDUM OPINION

LARO, Judge:  These cases arise out of petitioners' participation in the

Sterling Benefit Plan (SBP), a purported welfare benefit plan consisting of the

respective separate plans that each participating employer customizes to apply for

[*2] its employees alone.  These cases were consolidated for trial, briefing, and opinion and were submitted fully stipulated under Rule 122.[1]

Respondent determined deficiencies in petitioners' Federal income tax for tax years 2005 and 2006 as follows:

Machaceks, docket No. 12701-11

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|---|---|---|
| 2005 | $164,739 | $32,948 |
| 2006 | 127,250 | 25,450 |

Brenda S. Jones, docket No. 5147-13

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|---|---|---|
| 2005 | $79,715 | $15,943 |
| 2006 | 89,491 | 17,898 |

We decide the following issues:

1.  whether John J. Machacek, Jr., Inc.'s (Machacek, Inc.) and Adstracts, Inc.'s (Adstracts) participation in the SBP constitutes a nonqualified deferred compensation arrangement under section 402(b)(4).  We hold that it does;

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) applicable to the relevant years.  Rule references are to the Tax Court Rules of Practice and Procedure.  We round dollar amounts to the nearest dollar.

**[*3]**  2.  whether the life insurance policy purchased by the SBP on the life of John Machacek was a part of a compensatory split-dollar life insurance arrangement by reason of material modification after September 17, 2003.  We hold that it was;

3.  whether Ms. Jones must include in her gross income any vested accrued benefits in the SBP pursuant to section 402(b)(4) because the Adstracts plan failed to cover any eligible non-highly compensated employees with respect to the 2005 and 2006 tax years.  We hold that she must;

4.  whether the Machaceks must include in gross income the economic benefit from participation in a compensatory split-dollar life insurance arrangement and vested accrued benefits in the SBP pursuant to section 402(b)(4) for tax years 2005 and 2006.  We hold that they must;

5.  whether Machacek, Inc. may deduct the $100,000 contribution it paid to the SBP for the 2005 tax year.  We hold that it may not;

6.  whether petitioners are liable for the accuracy-related penalty under section 6662(a) for all the years at issue.  We hold that they are.

- 4 -

**[*4]**                     <u>Background</u>

I.     <u>Overview</u>

The parties submitted the cases fully stipulated under Rule 122.  The

stipulations of fact and the facts drawn from stipulated exhibits are incorporated

herein.  The case at docket No. 12701-11 is appealable to the Court of Appeals for

the Sixth Circuit absent stipulation of the parties to the contrary.  The case at

docket No. 5147-13 is appealable to the Court of Appeals for the Fourth Circuit

absent stipulation of the parties to the contrary.

II.    <u>SBP</u>

We have previously described the operation of the SBP in our Opinion in

<u>Our Country Home Enters., Inc. v. Commissioner</u>, 145 T.C. __, __ (slip op. at 13-

17) (July 13, 2015), and we incorporate the facts related to the SBP operation as

found therein.  We briefly reiterate certain relevant facts.

Ronald Snyder, an attorney and certified public accountant, together with

his colleagues established the SBP in October 2002 as a way for employers to fund

and pay pension benefits in excess of what was allowed under traditional pension

plans.  In the 2005 and 2006 tax years the SBP's trustee was Fifth Third Bank of

Florida.

**[*5]**   The SBP ostensibly operates as a single welfare benefit plan, which is an aggregation of separate multiple single employer welfare benefit plans under section 419(e).  The SBP offers to pay various benefits, including death, medical, and disability benefits, during a participating employee's current employment and/or retirement, subject to an employer-specific vesting schedule.  The SBP gave participating employers a lot of flexibility in selecting the extent of those benefits they wished to provide through the SBP, as well as the general provisions applicable to the plan, employee participation requirements, and the vesting schedule for the benefits payable under the employer's plan.  Each employer determined the amount and the frequency of its payments to the SBP.  Employees were allowed to make payments to the SBP if their employer allowed them, and any such payment would be credited to the employee's personal account that was maintained by the plan.

To fund the benefits under the plan, the SBP purchased a variety of life insurance products, including individual and group policies, cash value policies, and term policies.  In addition, sometimes SBP held annuities to fund the benefits.  Employers could direct the SBP as to what insurance policies they wanted to use to fund the benefits payable to employees.  Each insurance policy or annuity funded all of the benefits payable as to the specific employee covered by that

**[\*6]** policy. In other words, if there was no insurance policy or an annuity in an employee's name, that employee would not be entitled to any benefits from the SBP.

A participating employee could designate the beneficiary or beneficiaries to receive the death benefits payable under the SBP and the death proceeds of any life insurance policy maintained on the life of the employee. The amount of the death benefit usually was the face amount of the insurance policy on the employee's life, and that benefit was payable in accordance with the terms of the insurance policy. An employee retiring from employment with the employer could elect to receive the paid-up life insurance policy in lieu of a retirement death benefit.

An employer could at any time discontinue making payments to the SBP or terminate its participation. After that, all amounts credited to an employee's personal account would become fully vested and the employer could not receive any refund. If an employer stopped making payments to the SBP, it could direct that the trustee either retain the plan assets for the employees pursuant to the provisions of the plan, or transfer the plan assets to a successor trustee, or retain the assets for the benefit of the employees. However, if an employer terminated its

**[\*7]** participation, the administrator could distribute the assets in the employer's plan to the participants or their beneficiaries as one of the options.

III.   The Machaceks and the SBP

A.   The Machaceks

At the time of filing the petition, petitioners John and Marianne Machacek were married and resided in Ohio.  The Machaceks had a son, Shawn Machacek.  John and Marianne Machacek held 70% and 30% of the shares in Machacek, Inc., an S corporation, respectively.

The Machaceks timely filed their Federal income tax returns for the 2005 and 2006 tax years.  In 2005 and 2006, John Machacek reported $78,556 and $79,056, respectively, in compensation received from Machacek, Inc.  Marianne Machacek received $14,400 in 2005 and $14,900 in 2006 in compensation from Machacek, Inc.  Machacek, Inc. reported $6,956 in life insurance payments on John Machacek's life in both 2005 and 2006 on Mr. Machacek's Forms W-2, Wage and Tax Statement.  In addition, Shawn Machacek received $182,060 in 2005 and $78,000[2] in 2006 in reported compensation from Machacek, Inc.

---

[2]Shawn Machacek's Form W-2 for 2006 shows $78,000, but we note that this is inconsistent with the SBP Annual Valuation Report for 2006, which states that Shawn Machacek's Form W-2 salary was $182,060.

**[\*8]** B.     Machacek, Inc. and Its Participation in the SBP

Machacek, Inc. adopted the SBP as of December 24, 2002.  Initially, Machacek, Inc. elected to provide its employees with preretirement group-term life insurance and postretirement group-term life insurance.  As of January 1, 2005, Machacek, Inc. entered into a new adoption agreement amending the terms of its participation in the SBP to add a preretirement health expense reimbursement account as a benefit to its employees.  Machacek, Inc. selected a normal retirement age of 59 with 14 years of service and an early retirement age of 55 with 9 years of service.  Compensation for purposes of the SBP would include only Form W-2 compensation.  From 2004 to 2006 the SBP used 10-year cliff vesting, which meant that an employee was not vested before 10 years of service and became 100% vested upon reaching this threshold.

In 2005, five of Machacek, Inc.'s eight employees were eligible to participate in the SBP.  In 2006, five of Machacek, Inc.'s seven employees were eligible to participate in the SBP.  However, only three employees--John Machacek, Shawn Machacek, and Matthew Beebe--ended up signing employee enrollment and election forms for said participation.  In 2005 and 2006 John Machacek had over 10 years of service and was fully vested under the SBP terms.  On December 30, 2004, Machacek, Inc. contributed $100,000 to the SBP.  On

[*9] December 28, 2005, Machacek, Inc. contributed $30,000 and $70,000 to the SBP.  Machacek, Inc. did not make any contributions to the SBP during tax year 2007.

Machacek, Inc. timely filed a 2005 Form 1120S, U.S. Income Tax Return for an S Corporation.  On its 2005 Form 1120S, Machacek, Inc. deducted $100,863 for contributions paid to the SBP during the year.

C.     Assets Held in Trust To Fund SBP Benefits

Fifth Third Bank of Florida was the trustee for the SBP and for the Machacek, Inc. Employee Welfare Benefit Plan's Trust formed under the SBP provisions (Machacek trust).  The parties stipulated that the Machacek trust was not a voluntary employee beneficiary association under the provisions of section 501(c)(9) and was also not a grantor trust.

Fifth Third Bank of Florida held the following assets in trust for the benefit of Machacek, Inc. employees:  a life insurance policy on the life of John Machacek issued by Indianapolis Life (life insurance policy or policy), a life insurance policy in the name of William Clymer (Clymer policy),[3] and a Western Reserve Life Assurance Co. annuity with John Machacek as the annuitant

---

[3]William Clymer was not an employee of Machacek, Inc. in 2005 and 2006.

**[*10]** (Machacek annuity) originally purchased in 1997 and transferred to Fifth Third Bank of Florida on May 15, 2003.

### 1. Life Insurance Policies

Fifth Third Bank of Florida purchased the life insurance policy on April 10, 2003. During the years at issue the annual premium for the policy was $100,000, payable every 12 months from the date of issue. The policy provided that each premium must be paid on or by its due date, with a 31-day grace period during which the policy would stay in force. The policy lapsed if the premium was not paid during the grace period, but it could be reinstated during the life of the insured up to five years after it lapsed. If the policy owner wanted to reinstate the policy after 15 days from the grace period expiration, the insured person would have to submit evidence of insurability, including providing information about his or her medical history.

In 2005 and 2006 the face value of the policy was $1,398,015. In 2005 the SBP failed to make a timely premium payment on the policy, and it lapsed on May 11, 2005. On June 16, 2005, the SBP submitted an application for reinstatement which included answers of John Machacek regarding his medical history and insurability. On June 24, 2005, after the SBP made the premium payment, the policy was reinstated. In 2006 and 2007 the SBP made timely premium payments.

[*11] The cost of John Machacek's death benefit was $5,802 in 2005 and $6,543 in 2006.

In addition, the Machacek trust held the Clymer policy, which had no accumulation value. The Machacek trust did not own any other life insurance policies on the lives of any other Machacek, Inc. employees.

### 2. Annuity

During the years at issue the Machacek trust also held the Machacek annuity. In 2005 and 2006 the Machacek trust paid the annual annuity fees by surrendering the necessary amounts from the Machacek annuity. As of December 31, 2005, the cash value of the annuity contract was $129,818. On October 16, 2006, John Machacek requested that the Machacek trust use $100,000 of the funds held in the annuity contract to pay the premiums for the life insurance policy because Machacek, Inc. was not likely to be able to pay the premium out of pocket that year. On December 20, 2006, a net surrender of $132,041 was made from the Machacek annuity, resulting in it having zero value as of December 31, 2006.

### D. Annual Valuations and Allocation of Economic Benefit

From 2004 to 2006, the postretirement and preretirement death benefit payable under the life insurance policy on John Machacek's life was $1,398,015. In 2004 and 2005 Machacek, Inc. contributed $100,000 to the SBP, which was

[*12] used to fund the premiums for the life insurance policy. In 2006 Machacek, Inc. did not pay any contributions to the plan. Instead, the SBP received a surrender of the proceeds from the annuity and applied them as follows: $100,000 towards life insurance policy accumulation value and $32,041 to the "cash on deposit" asset.

The table below summarizes the annual allocation of employer contributions to employee benefits and accumulation value in the life insurance policy.

| Year | Employee benefits allocation | Life insurance policy accumulation value |
|---|---|---|
| 2004 | $88,237 | $113,607 |
| 2005 | 111,763 | 204,135 |
| 2006 | -0- | 303,317 |

John Machacek was fully vested under the terms of the SBP in 2005 and 2006. In 2005 and 2006 he would have been entitled to a preretirement or postretirement death benefit of approximately $786,000.[4]

The 2005 and 2006 annual valuations of the SBP for Machacek, Inc. did not reflect any allocation of contributions to a health expense reimbursement

---

[4]This amount is based on the formula in the SBP adoption agreement, which was based on employees' Form W-2 compensation and a multiple of 10. In 2005 and 2006 John Machacek received compensation of $78,556 and $79,056 respectively, from Machacek, Inc.

[*13] arrangement or to postretirement medical benefits.  The SBP did not pay any medical benefits or health expense reimbursements during the 2005 and 2006 tax years.

IV.    Brenda S. Jones and the SBP

A.    Brenda S. Jones

At the time of filing the petition, Ms. Jones resided in Raleigh, North Carolina.  Robert Jones and Ernest Jones were the sons of Ms. Jones.  Ms. Jones timely filed her 2005 and 2006 Forms 1040, U.S. Individual Income Tax Return.

B.    Adstracts and Its Participation in the SBP

Adstracts was a C corporation wholly owned by Ms. Jones during the years at issue.  Adstracts adopted the SBP as of January 1, 2003, through an adoption agreement dated October 22, 2003.  Ms. Jones signed the adoption agreement on behalf of Adstracts.  Adstracts elected not to provide its employees with any benefits.[5]

In 2005 and 2006 Adstracts had 26 and 23 employees, respectively.  Both in 2005 and 2006 only 12 employees were eligible to participate in the SBP, but none of them signed employee enrollment and election forms with respect to the plan.

[5]The adoption agreement provides that Adstracts elected to provide its employees with pre- and post-retirement group-term life insurance in the amount of annual compensation multiplied by 0.

[*14] According to the adoption agreement, an employee's normal retirement age would be 55 with 10 years of participation, and an employee's early retirement age would be 50 with 10 years of participation. During 2006 Ms. Jones was fully vested in the account balance held by the SBP.

The parties stipulated that the trust for the SBP adopted by Adstracts (Adstracts trust) was not a voluntary employee beneficiary association under the provisions of section 501(c)(9).

### C. Assets Held in Trust To Fund SBP Benefits

During the years at issue the only asset held by the Adstracts trust was an annuity contract with Brenda Jones as the annuitant (Adstracts annuity). The annuity was originally purchased on July 23, 1997, and as of August 16, 1999, the owner and beneficiary of the Adstracts annuity was the Fifth Third Bank as trustee of the Industry Association, Inc. employee benefits trust, a predecessor to the SBP.

### D. Annual Valuations and Allocation of Economic Benefit

On December 31, 2005, the Adstracts annuity had a value of $243,448. On December 31, 2006, the Adstracts annuity had a value of $271,414.

Adstracts made no contributions to the SBP in the 2005 and 2006 tax years. The annual valuation of the SBP for Adstracts did not allocate any contributions to employee benefits in 2005 and 2006. The parties stipulated that Ms. Jones was

[*15] fully vested in the SBP benefits in tax year 2006.  As a 100% shareholder of Adstracts, Ms. Jones had full control over vesting schedules and participation requirements for the SBP at all relevant times.

## Discussion

I.    Overview

Respondent's primary argument in these cases is that Machacek, Inc.'s and Adstracts' respective SBPs represented discriminatory deferred compensation arrangements because they failed to provide benefits to anybody except the shareholder-employees and other highly compensated employees.

In addition, in the Machaceks' case respondent argues that the Machacek, Inc. SBP is subject to the split-dollar life insurance arrangement regulations. Although the Machacek trust entered into a contract for the insurance policy on the life of John Machacek before September 17, 2003, the effective date of section 1.61-22, Income Tax Regs., respondent argues that the regulation still applies because the lapse and reinstatement of the policy or, in the alternative, the modification of the SBP to provide for health expense reimbursement benefits constitutes a material modification under section 1.61-22(j)(2), Income Tax Regs.

[*16] We address these arguments in turn, followed by discussions of the tax consequences of participation in the SBP to the Machaceks and Brenda Jones and the issue of penalties.

II.    Machacek, Inc.'s and Adstracts' SBPs as Deferred Compensation Arrangements

A.    Overview

Respondent argues that Machacek, Inc.'s and Adstracts' participation in the SBP was a part of a compensatory arrangement whose sole purpose was to compensate selected employees rather than to provide welfare benefits for all of their employees and thus should be treated as payments to a nonqualified deferred compensation plan under section 402. Petitioners, in turn, contend that this argument was made by the Commissioner and rejected by the Court in Our Country Home Enters., Inc. v. Commissioner, 145 T.C. at __ (slip op. at 65). Thus, petitioners urge us to apply only the split-dollar life insurance arrangement regulations in these consolidated cases.

Petitioners' position is flawed in several respects. First, the holdings of the Opinion in Our Country Home Enters., Inc. clearly indicate that the split-dollar life insurance arrangement regulations do not apply to cases where benefits are not

**[*17]** funded by a life insurance policy. For example, we held in Our Country Home Enters., Inc. v. Commissioner, 145 T.C. at __ (slip op. at 75), that when an employer's participation in the SBP did not involve a purchase of life insurance, it was not a split-dollar life insurance arrangement and, thus, not subject to the section 1.61-22(d), Income Tax Regs., economic benefit provisions. Instead, the payments made to the plan by the corporation-employer were taxable as constructive distributions to its shareholder-employee. Id. at __ (slip op. at 88-89) (citing Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 91-92 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002)).

Second, we did not need to apply and did not reach the discussion of the deferred compensation rules in connection with the consolidated cases discussed in Our Country Home Enters., Inc. because we resolved all the issues raised on other theories. This does not mean, however, that we "rejected" the deferred compensation theory, as petitioners see it.

Finally, neither section 61 nor the regulations thereunder prevent us from applying both the deferred compensation provisions and split-dollar life insurance regulations to the same set of transactions. The preamble to section 1.61-22, Income Tax Regs., states:

**[*18]**     Taxpayers should note that, in certain cases, a separate tax rule may require a non-owner to include an amount in gross income under an equity split-dollar life insurance arrangement at a time earlier than would be required under these regulations. * * * An equity split-dollar life insurance arrangement governed by the economic benefit regime constitutes a deferred compensation arrangement.

68 Fed. Reg. 54340 (Sept. 17, 2003). Thus, the split-dollar life insurance regulations were not intended to be the sole set of rules applicable to arrangements similar to petitioners'. For these reasons, respondent is not precluded from raising the deferred compensation theory in the current cases. To the extent the arrangements made by Machacek, Inc. or Adstracts are covered both by deferred compensation provisions and split-dollar life insurance regulations, we will follow the principles outlined in section 1.61-22, Income Tax Regs., including those articulated in the preamble to the regulations, and Our Country Home Enters., Inc.

B.     Whether Machacek, Inc.'s and Adstracts' Plans Are Welfare Benefit Plans

We now address the issue of whether Machacek, Inc.'s and Adstracts' participation should be treated as participation in a welfare benefit plan or a plan of deferred compensation.

The Code does not define what constitutes a deferred compensation plan, but the regulations provide that an arrangement defers the receipt of compensation or benefits to the extent that, under it, an employee receives compensation or

[*19] benefits more than a brief period of time after the end of the employer's taxable year in which the services creating the right to such compensation or benefits are performed. Sec. 1.404(b)-1T, Q&A-2(a), Temporary Income Tax Regs., 51 Fed. Reg. 4321 (Feb. 4, 1986).

When it comes to determining whether a plan is a welfare benefit plan or a deferred compensation plan, courts consider a number of factors such as whether payment of the benefits depends on a contingent event or is guaranteed upon a certain event, whether vesting depends on length of service, whether benefits are commensurate with salary, and the intended purpose of the plan. See Wellons v. Commissioner, 31 F.3d 569, 571-572 (7th Cir. 1994) (stating that when a plan has features of both a welfare benefit and a deferred compensation plan, the entire plan is evaluated under deferred compensation plan standards), aff'g T.C. Memo. 1992-704; see also Booth v. Commissioner, 108 T.C. 524, 563-564 (1997) (holding that a plan was a welfare benefit plan where there was credible evidence that the intent of the plan's promoter was to create a legitimate non-abusive welfare benefit plan).

We have previously found in Our Country Home Enters., Inc. v. Commissioner, 145 T.C. at ___ (slip op. at 78-79), that the SBP was never intended to be a legitimate welfare benefit plan. The plan was designed as a tool that would

[*20] provide shareholder-employees and in some cases a handful of key employees with a tax-efficient tool for savings and financial planning.  Id.  In addition, the SBP has several hallmarks of a traditional deferred compensation plan under Wellons and Booth:  the payment of death or medical benefits depended on the vesting schedule, years of service, and employee's annual compensation.[6]  Because the Machaceks and Brenda Jones controlled 100% of the shares in Machacek, Inc. and Adstracts, respectively, they could cause the companies to terminate their participation in the SBP at any time.  Moreover, John Machacek and Brenda Jones were able at all times to amend the adoption agreements for their companies' SBPs to change the vesting requirements and retirement age.  In that event, under the respective SBP's terms, the trustee would be required to distribute the funds held in trust to the employees or their beneficiaries.  This provided for a certainty of the payment to the shareholder-employees, regardless of whether a specified payout event occurred.

Thus, we conclude that Machacek, Inc.'s and Adstracts' SBPs are deferred compensation plans, not welfare benefit plans.

---

[6]Both Machacek, Inc. and Adstracts had a 10-year cliff vesting schedule. Machacek, Inc. used a multiplier of 10 with a base of an employee's compensation reported on Form W-2 to determine the amount of benefit.  Adstracts used a multiple of 0 to compute the benefits.

**[*21]** C.  <u>Whether the SBPs for Machacek, Inc. and Adstracts Are Nonqualified</u>
<u>Discriminatory Trusts</u>

The next step in our analysis is to determine whether Machacek, Inc.'s and

Adstracts' respective plans are governed by the provisions of section 402(b)(4) as

nonqualified discriminatory trusts holding assets of deferred compensation plans.

Respondent argues that the SBPs for Machacek, Inc. and Adstracts should

be governed by section 402(b) because both plans fail to meet the requirements set

out in section 410(b).  Petitioners, in turn, argue that the SBP has never purported

to be tax exempt under section 401(a) and has consistently filed Form 1041, U.S.

Income Tax Return for Estates and Trusts, as a taxable trust with respect to its

operations.  Petitioners suggest that for that reason section 410(b)(4) does not

apply to the SBP.

Section 402(b) provides the timing rules for recognition of income by a plan

participant from a nonexempt employee trust.  Section 402(b)(1) provides:

> Contributions to an employees' trust made by an employer during a
> taxable year of the employer which ends with or within a taxable year
> of the trust for which the trust is not exempt from tax under section
> 501(a) shall be included in the gross income of the employee in
> accordance with section 83 (relating to property transferred in
> connection with performance of services) * * *.

We read this section to apply to any employee trust that is not exempt from tax

under section 501(a) in a given year.  Section 501(a) exempts from taxation an

[*22] organization described in section 401(a), such as a qualified pension plan. Thus, if an employee trust does not meet the requirements of section 401(a), it is subject to the section 402(b) provisions.

The parties agree that neither the Machacek trust nor the Adstracts trust qualified under the provisions of section 501(c)(9) as a voluntary employees' beneficiary association. Petitioners also stated that the SBP trusts for both companies were never intended to qualify under section 401(a) as qualified retirement plans and have consistently filed Forms 1041 as taxable trusts with respect to their operations. Thus, according to the plain language of section 402(b), Machacek, Inc.'s and Adstracts' trusts are subject to section 402(b).

Further, section 402(b)(4) provides special rules for trusts that fail to meet the requirements of section 410(b). If one of the reasons that a trust is not exempt from tax under section 501(a) is the failure of the associated plan to meet the requirements of section 410(b)--which essentially provides rules for nondiscrimination in plan coverage--then a highly compensated employee must include in income an amount equal to the vested accrued benefit of such employee as of the close of the taxable year of the trust. Petitioners argue that because the SBP was never intended to be a qualified retirement plan under section 401(a) and 501(a), the section 402(b)(4) rules should not apply at all.

**[*23]** We disagree with this line of reasoning. Section 402(b)(4)(A) provides that the special rules apply if one of the reasons a trust is not exempt under section 501(a) is the failure of the associated plan to meet the requirements of section 410(b). Section 402(b) in general does not differentiate between the plans that were intended to qualify under section 501(a), but failed for some reason, and plans that were never intended to qualify under section 501(a). The same reasoning applies to the provisions of section 402(b)(4).[7] A different reading of section 402(b)(4) would result in condoning widespread employee discrimination through the use of nonqualified plans. Section 402(b) thus provides two sets of rules: the first set is based on section 83 principles and applies when an employer establishes a nonqualified employee trust that meets nondiscrimination requirements set out in section 410(b), while the second set of rules applies when a nonqualified employee trust fails to comply with the requirements of section 410(b).

Under section 410(b), a trust is not a qualified trust under section 401(a) unless the trust is designated by the employer as part of a plan which meets one of

---

[7]Respondent points to Rev. Rul. 2007-48, 2007-2 C.B. 129, for the proposition that the income recognition rules in sec. 402(b)(4) apply to deferred compensation plans that were neither qualified retirement plans nor intended to be qualified retirement plans. We note that this pronouncement was not available to guide petitioners during the years at issue.

[*24] the following requirements: (1) the plan benefits at least 70% of employees who are not highly compensated employees; (2) the plan benefits a percentage of employees who are not highly compensated employees which is at least 70% of the percentage of highly compensated employees benefiting under the plan; (3) the plan benefits such employees as qualify under a classification set up by the employer and found by the Secretary not to be discriminatory in favor of highly compensated employees, and the average benefit percentage for employees who are not highly compensated employees is at least 70% of the average benefit percentage for highly compensated employees. See sec. 410(b)(1) and (2).

For purposes of section 402(b)(4), a highly compensated employee is defined by section 414(q) as any employee who was a 5% owner at any time during the year or preceding year, or for the preceding year, had compensation from the employer in excess of a certain amount and, if the employer elects the application of this clause for such preceding year, was in the top-paid group of employees for such preceding year. In 2005 the threshold compensation that would indicate a highly compensated employee was $95,000, and in 2006 it was $100,000. Secs. 414(q), 415(d); Notice 2004-72, 2004-2 C.B. 840; Notice 2005-75, 2005-2 C.B. 929.

[*25] Petitioners further argue that the benefits provided by the SBP--death benefits and health expense reimbursement benefits--fall squarely under one of the exceptions outlined in section 409A. Petitioners' liability under section 409A is not at issue in these cases, so we need not address or resolve this argument. However, we note that an arrangement that was never intended to provide any benefits, like that of Brenda Jones and Adstracts' SBP, or that served more as a tax-deferred savings account for a company's shareholders, like that of the Machaceks and Machacek, Inc.'s SBP, is not likely to qualify as a "bona fide" death benefit or health expense reimbursement benefit under section 409A(d)(1)(B) or section 1.409A-3(i), Income Tax Regs.

We now discuss whether the specific plans under Machacek, Inc.'s SBP and Adstracts' SBP failed to meet the section 410(b) requirements.

1. The Machaceks and Machacek, Inc.

In 2005 five out of eight employees of Machacek, Inc. were eligible to participate in the SBP. In 2006 five out of seven employees of Machacek, Inc. were eligible to participate in the SBP. Only three employees--John Machacek, Shawn Machacek, and Matthew Beebe[8]--signed employee enrollment and election

---

[8]Matthew Beebe was not vested in the plan benefits in 2005 and 2006. Because there was no life insurance in Mr. Beebe's name held by the trust, he was

(continued...)

[*26] forms for the SBP. Of these three employees, only John Machacek could potentially receive any benefits under the SBP because the Machacek trust only held life insurance with John Machacek as a beneficiary and an annuity with John Machacek as an annuitant.

John Machacek and Marianne Machacek were highly compensated employees because they owned 70% and 30% of Machacek, Inc., respectively. In addition, Shawn Machacek was a highly compensated employee in 2005 because he received compensation in excess of the threshold of $95,000 for 2005. Although both in 2005 and 2006 there were eligible non-highly compensated employees of Machacek, Inc., none of them was entitled to receive any benefit under the SBP terms. The notional accounting as reflected in annual valuations was a mere fiction because all of the assets held by the Machacek trust, except the Clymer policy, had John Machacek as the sole beneficiary. Thus, the Machacek, Inc. SBP failed all of the coverage tests provided by section 410(b).

2. Brenda Jones and Adstracts

Brenda Jones was a highly compensated employee of Adstracts because she owned 100% of the company stock in both 2005 and 2006. Out of 12 Adstracts

_____

[8](...continued)
not eligible for any benefits under the SBP provisions in the years at issue.

[*27] employees eligible to participate in the SBP in 2005 and 2006, she was the only employee who was entitled to receive any distributions. No other employee of Adstracts, whether highly compensated or not, was entitled to any benefits under the SBP adoption agreement. Therefore, the Adstracts' plan does not meet the requirements of section 410(b).

D.    Amounts To Be Included in Income Under Section 402(b)(4)

1.    In General

Section 402(b)(4)(A) provides that if a plan fails to meet the requirements of section 410(b), a highly compensated employee shall include in gross income an amount equal to the vested accrued benefit of such employee (other than the employee's investment in the contract) as of the close of such taxable year of the trust. We have previously held that the amount to be included under section 402(b)(4) is the amount of an employee's vested accrued benefit to the extent it has not been previously taxed to the employee. Yarish v. Commissioner, 139 T.C. 290, 298 (2012).

Petitioners attempt to distinguish Yarish from the current cases because in Yarish we discussed an employee stock ownership plan that failed to meet nondiscrimination requirements for several years. This attempt lacks merit. As this Court stated in Yarish: "[T]he purpose of section 402(b)(4)(A) is to

[*28] discourage highly compensated employees from participating in a plan that fails to satisfy certain coverage requirements." Yarish v. Commissioner, 139 T.C. at 297 (citing H.R. Conf. Rept. No. 99-841 (Vol. II), at II-416 to II-417 (1986), 1986-3 C.B. (Vol. 4) 1, 416-417). Consequently, applying section 402(b)(4)(A) in these cases would serve its intended purpose.

Petitioners further argue that applying section 402(b)(4)(A) in the cases at hand would result in violation of petitioners' constitutional right to be taxed only on "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). In Yarish v. Commissioner, 139 T.C. at 298 the Court rejected a similar argument, stating that "[t]he principle that amounts must be included in income for the taxable year the 'accession to wealth' occurs is not absolute. Congress has consistently made exceptions to achieve various public policy objectives." We reaffirm this conclusion here.

2.    The Machaceks

We will address the issue of tax consequences for the Machaceks later in this Opinion after we address respondent's theory that Machacek, Inc.'s SBP was subject to the split-dollar life insurance arrangement regulations.

[*29] 3.     Brenda Jones

Similar to the Machaceks, Brenda Jones must include in income all previously untaxed accrued vested benefits under the SBP for the 2005 and 2006 tax years.  Ms. Jones was a highly compensated employee in the 2005 and 2006 tax years because she owned 100% of Adstracts' stock.  The parties stipulated that Ms. Jones was fully vested in the SBP benefits in the 2006 tax year.  In addition, we find that Ms. Jones was fully vested in the SBP benefits in 2005 because she had full control of the vesting requirements and could cause Adstracts to amend the SBP adoption agreement to fit her needs.  See Our Country Home Enters., Inc. v. Commissioner, 145 T.C. at __ (slip op. at 74).  In addition, Ms. Jones met the 10-years-of-service vesting requirements under the Adstracts plan.

Because Adstracts' plan did not provide any benefits to other employees and Adstracts did not pay any contributions to the plan, we find that all of the plan's assets were held in trust for the benefit of Ms. Jones until the time she would decide to discontinue participation in the SBP and request a distribution of the assets.  Thus, for tax year 2005 Ms. Jones must include in income the previously untaxed vested benefit equal to the full value of the annuity held by the Adstracts SBP.  For tax year 2006 Ms. Jones must include in income an additional

**[\*30]** amount which represents the difference between the value of the annuity taxed in 2005 and the value of the annuity as of the end of the 2006 tax year.

III.  Machacek, Inc.'s SBP as a Split-Dollar Insurance Arrangement

A.  Overview of the Split-Dollar Insurance Arrangement Regulations

Respondent's secondary argument with respect to the Machaceks' and Machacek, Inc.'s participation in the SBP is that the split-dollar insurance arrangement regulations apply to the whole transaction. Respondent argues that this is so because Machacek, Inc.'s SBP was materially modified after September 17, 2003, the effective date of the split-dollar life insurance regulations. See sec. 1.61-22(j)(2)(i), Income Tax Regs. Respondent argues on the basis of two events that the split-dollar life insurance arrangement was materially modified:  (1) the lapse and subsequent reinstatement of the life insurance policy on the life of John Machacek; or, in the alternative, (2) the addition of the health expense reimbursement benefit to the arrangement in 2005. Petitioners disagree and argue that neither of these events resulted in a change that is "material" to trigger the application of the split-dollar life insurance arrangement regulations.

In general, a split-dollar life insurance arrangement is any arrangement between an owner and a non-owner of a life insurance contract that meets the rules set forth in section 1.61-22(b)(1), Income Tax Regs. Our Country Home Enters.,

[*31] Inc. v. Commissioner, 145 T.C. at __ (slip op. at 61).  In addition, the regulations cover arrangements between an owner and a non-owner of a life insurance contract if they are "compensatory arrangements" or "shareholder arrangements" within the meaning of section 1.61-22(b)(2)(ii) and (iii), Income Tax Regs.

A split-dollar life insurance arrangement that is materially modified after September 17, 2003, is treated as a new arrangement entered into on the date of modification for purposes of section 1.61-22(j)(1), Income Tax Regs., and is subject to the split-dollar life insurance arrangement regulations.  Sec. 1.61-22(j)(2)(i), Income Tax Regs.  The regulations do not define a material modification that would bring a specific arrangement within the regulation's reach.  See id.  The regulations do, however, provide a nonexclusive list of changes that are not considered to be material modifications.  See id. subdiv. (ii).  The nonexclusive list mostly covers modifications related to changes in the arrangements required to comply with laws, ministerial changes such as changes in the mode of premium payment or in the beneficiary of the life insurance contract, or a change in the owner of a life insurance contract when the change resulted from a transaction covered by section 381(a).  See id.

**[\*32]** Respondent argues that because the nonexclusive list in the regulations did not contain specific provisions covering either reinstatement of a life insurance policy or an addition of a new benefit under an arrangement, these modifications must have been material. We reject this argument. The regulations explicitly state that the list of changes not considered "material" is not exclusive. Id. Moreover, the Commissioner can publish revenue rulings, notices, and other guidance to provide additional guidance with respect to other modifications that are not material. Id. subdiv. (iii). As of the date of this opinion, we are not aware of such guidance by the Commissioner that would be applicable in the cases here. Thus, we need to consider the substance of the modifications of the Machacek, Inc. SBP plan to determine whether the changes are material.

At trial, we asked the parties to address in their briefs what constitutes "material modification" for purposes of section 1.61-22(j)(2)(ii), Income Tax Regs. Petitioners' position boils down to suggesting that a material modification affects the life insurance policy and its cash value, not any other benefits under the split-dollar life insurance arrangements. Respondent, in turn, urges us to use the approach adopted by the U.S. Supreme Court in Cottage Sav. Ass'n v. Commissioner, 499 U.S. 554, 565 (1991), and hold that a modification is material if it changes legal entitlements of the respective parties to the arrangement.

**[*33]** Respondent argues that materiality cannot be measured by a change in the cash value of a policy because not all changes bring about an immediate change in value. Respondent also points out that attempts to quantify what constitutes a "material modification" may be impractical and burdensome on the parties.

The regulations state that they apply "to any split-dollar life insurance <u>arrangement</u> (as defined in paragraph (b)(1) or (2) of this section) entered after September 17, 2003." Sec. 1.61-22(j)(1)(i), Income Tax Regs. (emphasis added). The specific section dealing with the modified arrangements also states that "if an <u>arrangement</u> entered into on or before September 17, 2003, is materially modified after September 17, 2003, the <u>arrangement</u> is treated as a new <u>arrangement</u> entered into on the date of the modification." <u>Id.</u> subpara. 2. (emphasis added). Section 1.61-22(b)(1), Income Tax Regs., defines a split-dollar life insurance arrangement as "any arrangement between an owner and non-owner of a life insurance contract" that satisfies certain criteria. Thus, the references to "arrangement" in section 1.61-22(j)(1) and (2), Income Tax Regs., contemplate not a life insurance contract itself, but an arrangement as a whole between an owner and a non-owner of that life insurance contract--the SBP itself in the Machaceks' case. For that reason, contrary to petitioners' suggested interpretation, we should look beyond

[*34] changes to the underlying life insurance policy or its cash value to determine whether the split-dollar life insurance arrangement regulations apply.

Further, neither petitioners nor respondent offered any authority for a bright-line rule that would allow us to quantify what modification is "material" within the meaning of section 1.61-22(j)(2), Income Tax Regs.  In the absence of any guidance, we are reluctant to invent such a rule.  Thus, we will look at whether a subsequent modification of a split-dollar life insurance arrangement went beyond merely ministerial actions and created different legal entitlements for the owner and non-owner of a life insurance policy.

B.      Whether the Life Insurance Lapse and Reinstatement Constituted a "Material Modification" of Machacek, Inc.'s SBP

Respondent argues that Machacek, Inc.'s participation in the SBP is subject to the split-dollar life insurance arrangement regulations because the life insurance policy on the life of John Machacek lapsed and was subsequently reinstated in 2005, which, according to respondent, constitutes either a new life insurance contract or a material modification of the old contract.  Petitioners disagree but do not present any specific arguments on the issue.

The life insurance policy had extensive provisions related to its lapse and reinstatement.  If the owner of the policy failed to pay a premium timely, the

[*35] policy provided for a 30-day grace period. Upon expiration of that grace period, a policy could be reinstated after the insured provided the insurance company with a filled-in questionnaire verifying his or her insurability. The Machacek policy lapsed on May 11, 2005, because the Machacek trust failed to timely transmit the premium to the insurance company. The life insurance policy was reinstated less than two months after its lapse, on June 24, 2005, after John Machacek sent in a questionnaire verifying his insurability and the Machacek trust transferred the overdue payment. There is no evidence in the record supporting a finding that the parties to the life insurance contract entered into a new agreement or changed any provisions related to the policy. The Machacek trust and Mr. Machacek did not forfeit their rights as to the amounts already contributed to the policy and were entitled to its full cash value upon reinstatement. Thus, the reinstatement of a life insurance policy, especially after such a short time, was not a new life insurance policy contract subject to the split-dollar life insurance arrangement regulations under section 1.61-22(j)(1), Income Tax Regs. It also did not constitute a material modification of a life insurance arrangement under section 1.61-22(j)(2), Income Tax Regs.

**[\*36]** C.    <u>Whether Adding a New Benefit to the Machacek, Inc. SBP</u>
                <u>Constitutes Material Modification</u>

Respondent's second argument supporting his determination that the

Machacek, Inc. SBP should be subject to the split-dollar life insurance

arrangement regulations is that the Machacek SBP arrangement was modified in

2005 by adding a preretirement health expense reimbursement benefit.

Petitioners, in turn, argue that because the change did not affect the life insurance

policy itself, it was not material within the meaning of section 1.61-22(j)(2)(i),

Income Tax Regs., and was more in the nature of the changes contemplated in the

nonexclusive list of modifications not considered material in section 1.61-

22(j)(2)(ii), Income Tax Regs.

As we discussed above, we consider a modification of a split-dollar life

insurance arrangement material if it went beyond a mere ministerial change and

created a different legal entitlement for the parties to a split-dollar life insurance

arrangement.  Here, amending the SBP adoption agreement to add a health

expense reimbursement benefit for all the eligible employees resulted in a change

that could potentially affect how the benefits were to be funded or how the cash

value in the policy might be used.  Unlike the mostly ministerial changes listed in

section 1.61-22(j)(2)(ii), Income Tax Regs., adding a health expense

[*37] reimbursement benefit through amending the SBP adoption agreement resulted in creating a new right under the existing split-dollar life insurance arrangement. When, as here, that right essentially unlocked access for a non-owner of a life insurance policy to its cash value regardless of an event such as death or retirement, the modification was material within the meaning of section 1.61-22(j)(2)(i), Income Tax Regs.

Because there was a material modification effective as of January 1, 2005, Machacek, Inc.'s plan falls under the split-dollar insurance arrangement regulations by reason of section 1.61-22(j)(2)(i), Income Tax Regs.

D.     Whether the Machacek, Inc. SBP Was a Compensatory Arrangement

Respondent further argues that the Machacek, Inc. SBP was a compensatory split-dollar life insurance arrangement within the meaning of section 1.61-22(b)(2)(ii), Income Tax Regs.[9] Petitioners in response reiterate the same

---

[9]Sec. 1.61-22(b)(2)(ii), Income Tax Regs., provides the following criteria for compensatory arrangements:

(A) The arrangement is entered into in connection with the performance of services and is not part of a group-term life insurance plan described in section 79;

(B) The employer or service recipient pays, directly or indirectly, all or any portion of the premiums, and

(continued...)

[*38] arguments that we have already discussed and rejected in <u>Our Country Home Enters., Inc. v. Commissioner</u>, 145 T.C. at __ (slip op. at 78-79), and earlier in this opinion, namely, that Machacek, Inc.'s SBP constitutes a legitimate welfare benefit plan.

We have previously held in this opinion that Machacek, Inc.'s SBP was not a welfare benefit plan. With respect to the first prong of the compensatory split-dollar life insurance arrangement test, Machacek, Inc.'s SBP was not a part of a group-term life insurance plan described under section 79 because the policy on the life of John Machacek was not a part of a group-term life insurance plan and was based on individual selection and assessment of John Machacek's personal insurability. <u>See</u> <u>Our Country Home Enters., Inc. v. Commissioner</u>, 145 T.C. at __ (slip op. at 66-70). In addition, eligibility for benefits under the Machacek, Inc. SBP adoption agreement depended at least in part on years of service and meeting

---

[9](...continued)
  (C) Either--

   (1) The beneficiary of all or any portion of the death benefit is designated by the employee or service provider or is any person whom the employee or service provider would reasonably be expected to designate as the beneficiary; or

   (2) The employee or service provider has any interest in the policy cash value of the life insurance contract.

[*39] other eligibility requirements. Thus, because the Machacek, Inc. SBP was an arrangement entered into in connection with the performance of services, Machacek, Inc.'s SBP met the first prong of the compensatory split-dollar life insurance arrangement test.

As to the second prong of the test, the employer and the formal owner of the life insurance policy, Machacek, Inc., paid the contributions for the insurance policy on the life of John Machacek through its contributions to the SBP. This falls squarely within the requirements in section 1.61-22(b)(2)(ii), Income Tax Regs.

Finally, under Machacek, Inc.'s SBP provisions, employees could select beneficiaries of their death benefits under the plan.

For these reasons, we conclude that Machacek, Inc.'s SBP was a compensatory split-dollar life insurance arrangement. Because John Machacek at all relevant times could effect a distribution of the Machacek, Inc.'s trust assets, we conclude that John Machacek had an interest in the cash value of the life insurance policy on his life.

E.     Consequences to the Machaceks

Because both section 402(b)(4) and the split-dollar life insurance arrangement regulations apply to the Machacek, Inc. SBP, we will apply the split-

**[\*40]** dollar life insurance arrangement regulations to the life insurance policy and section 402(b)(4) to the annuity held by the Machacek trust.[10]

      1.     Life Insurance Policy

The split-dollar life insurance arrangement regulations provide that a non-owner of a life insurance contract who is a party to a split-dollar life insurance arrangement must include in income the value of the economic benefit provided during the relevant tax years. The economic benefit is a sum of: (1) the cost of current life insurance protection provided to the non-owner during the year, as defined in section 1.61-22(d)(3), Income Tax Regs., plus (2) the amount of the policy cash value in which the non-owner has current access during that year, as defined in section 1.61-22(d)(4), Income Tax Regs., and unreduced by surrender

---

[10]We note that the end result for the Machaceks would be consistent with applying only sec. 402(b)(4). Under sec. 402(b)(4), the Machaceks would include in income any vested accrued benefit under the SBP for the 2005 and 2006 tax years that has not been taxed previously. See Yarish v. Commissioner, 139 T.C. 290, 298 (2012). For both years at issue the Machaceks would include in income the sum of the accumulation value in the life insurance policy and the previously untaxed balance in the annuity account. For 2006 the Machaceks would include only the excess of the 2006 vested benefit over the amount already taxed in 2005 as a vested benefit. However, applying the split-dollar life insurance arrangement regulations to the life insurance policy portion of the SBP would result in denying a corporate-level deduction for the contribution paid by Machacek, Inc. to the SBP in 2005. Because Machacek, Inc. is an S corporation, this would make the contribution taxable to the Machaceks.

[*41] charges, plus (3) the value of any other economic benefits provided to the non-owner. Sec. 1.61-22(d)(1), Income Tax Regs.

Because we previously concluded that John Machacek had current access to the cash value of the insurance policy in his name, the Machaceks must include in income for both 2005 and 2006 the previously unreported and untaxed portions of the accumulation value of the Machaceks' policy and the current cost of the death benefit.

Petitioners raised during oral argument and on brief the issue that the Machaceks have already reported as income the current cost of insurance in each year that they participated in the SBP. We find that this contention is not supported by the evidence in the record. We observe that Forms W-2 for John Machacek indeed report certain amounts in box 12(c). However, these amounts are different from the actual costs of the death benefits for 2005 and 2006 as reflected in our findings of fact. There is no evidence or testimony that would allow us to link the two numbers. For that reason, the Machaceks must include the costs of the death benefits in income for the 2005 and 2006 tax years.

2. Machacek Annuity

As discussed above, John Machacek was a highly compensated employee of Machacek, Inc. by virtue of stock ownership in the corporation. The parties

[*42] stipulated that John Machacek was fully vested in the SBP benefits in tax year 2006. We also find that John Machacek was fully vested in the SBP benefits in tax year 2005. In Our Country Home Enters., Inc. v. Commissioner, 145 T.C. at __ (slip op. at 74), we found that "the shareholder/employees were not necessarily bound by the vesting requirements that were initially set in their plans. Instead, at their whim they could accelerate or otherwise change the vesting requirements to their preference." This conclusion equally applies in the Machaceks' case.

Thus, the Machaceks should include in income any vested accrued benefit under the plan for the 2005 and 2006 tax years that has not been taxed previously. See Yarish v. Commissioner, 139 T.C. at 298. For both years at issue the Machaceks should include in income the previously untaxed balance in the annuity account.[11] For 2006 the Machaceks should include only the excess of the 2006 vested benefit over the amount taxable in 2005 as a vested benefit.

F. Consequences to Machacek, Inc.

Respondent argues that Machacek, Inc. cannot deduct its contribution to the SBP in 2005[12] because the contribution did not meet the requirements of section

---

[11]We addressed the inclusion of the life insurance policy cash value in the discussion of the split-dollar life insurance arrangement consequences.

[12]There is no evidence in the record that Machacek, Inc. claimed a deduction
(continued...)

**[\*43]** 162.  Petitioners argue that the payments are deductible under section 1.162-10, Income Tax Regs., as amounts paid for welfare or similar benefit plan and are ordinary and necessary business expenses.  We agree with respondent.

Section 162(a) is generally the primary hurdle that a taxpayer must clear to deduct a business expense.  Section 162(a) lets taxpayers deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Under that section, an expenditure is deductible if it is:  (1) an expense, (2) an ordinary expense, (3) a necessary expense, (4) paid (in the case of a cash method taxpayer) or incurred (in the case of an accrual method taxpayer) during the taxable year, and (5) made to carry on a trade or business.  See Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352-353 (1971); Lychuk v. Commissioner, 116 T.C. 374, 386 (2001).

In addition, because Machacek, Inc.'s participation in the SBP was a split-dollar life insurance arrangement, Machacek, Inc. may deduct an expense related to the arrangement only if the deduction meets the rules of section 1.83-6(a)(5), Income Tax Regs.  See sec. 1.61-22(f)(2)(ii), Income Tax Regs.

---

[12](...continued)
for the 2006 SBP contribution on its Federal tax return, so we do not address this issue here.

**[*44]** We have previously determined that Machacek, Inc.'s SBP was not a welfare benefit plan. Thus, the contributions to the plan do not fall under section 1.162-10, Income Tax Regs., as petitioners suggest.[13] Petitioners also do not argue that Machacek, Inc. met the requirements for deductibility under section 1.83-6(a)(5), Income Tax Regs. There was no transfer of the policy from Machacek, Inc. to John Machacek. The full amount of Machacek, Inc.'s contribution to the SBP was spent on paying a premium on the life insurance policy. As a result, Machacek, Inc. may not deduct its contributions to the SBP in 2005.

## IV.  Section 6662(a) Penalties

Section 6662(a) imposes a 20% accuracy-related penalty on an underpayment of tax required to be shown on a return. Any portion of an underpayment which is attributable to negligence or disregard of rules or

---

[13]Petitioners also suggest that at least a portion of the annual contributions is attributable to providing a group-term life insurance benefit covered by sec. 79, and health expense reimbursement benefits are covered by sec. 106. We reject this argument. We have previously concluded that the Machacek, Inc. SBP did not provide group-term life insurance covered by sec. 79. The allocation of funds to the notional accounts to fund the purported health expense reimbursement benefit was illusory because the full amount of the Machacek, Inc. annual contribution was spent to pay a premium on John Machacek's life insurance policy. In addition, there is no evidence in the record that any of Machacek, Inc.'s employees knew of or ever used that benefit. Instead, the addition of the benefit merely unlocked to John Machacek access to the cash value of the policy before retirement.

[*45] regulations or a substantial understatement of income tax is subject to the accuracy-related penalty. Sec. 6662(b)(1) and (2).

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code or to exercise ordinary and reasonable care in the preparation of an income tax return. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes any failure to maintain adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard includes any careless, reckless or intentional disregard of rules or regulations. Id. subpara. (2).

For individuals, a substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Here, these amounts are as follows:

| Petitioner | Year | Amount of tax shown on the tax return | Amount of tax required to be shown | 10% of Tax required to be shown | Understatement |
|---|---|---|---|---|---|
| Machaceks | 2005 | $22,559 | $187,298 | $18,730 | $164,739 |
| Jones | 2005 | 14,604 | 94,319 | 9,432 | 79,715 |
| Machaceks | 2006 | 32,138 | 159,388 | 15,939 | 127,250 |
| Jones | 2006 | 19,377 | 108,868 | 10,887 | 89,491 |

[*46] The understatement amounts here are attributable to the issues covered in this opinion. Accordingly, respondent has met his burden of production under section 7491(c), and petitioners' understatements of income tax are substantial within the meaning of section 6662(d)(1)(A) and (B).

Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the imposition of a penalty is inappropriate because, for example, the taxpayer acted with reasonable cause and in good faith in relying on advice of a competent tax professional. Sec. 6664(c)(1); United States v. Boyle, 469 U.S. 241 (1985); Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 98; sec. 1.6664-4(b)(1), (c), Income Tax Regs. To prove that reliance on the advice of a tax professional constitutes reasonable cause, the taxpayer must prove by a preponderance of the evidence that he or she meets the following three requirements: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99. Reliance may be unreasonable when it is based on statements of insiders, promoters, or their offering materials, or when the

**[*47]** person relied upon has an inherent conflict of interest about which the taxpayer knew or should have known.  See id. at 98-99.

In these cases, petitioners did not offer evidence to support the finding that their reliance on tax advice or SBP promoters constitutes reasonable cause.  Thus, we sustain respondent's determination of the penalty under section 6662(a) for each year at issue for all petitioners.

V.    Conclusion

We have considered all of the arguments that petitioners made, and to the extent not discussed above, conclude that those arguments are irrelevant, moot, or without merit.  We have considered respondent's arguments only to the extent stated herein.

To reflect the foregoing and concessions by petitioners,

Decisions will be entered

under Rule 155.