156 T.C. No. 9

UNITED STATES TAX COURT

RUBEN DE LOS SANTOS AND MARTHA DE LOS SANTOS, Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5458-16.                                    Filed April 12, 2021.

During 2011 and 2012 P-H was the sole shareholder of an S corporation that employed him and P-W.  The S corporation adopted an employee welfare benefit plan that provided benefits to P-H, P-W, and four other employees.  Ps received these benefits in their capacity as employees.

The benefit plan, insofar as it afforded life insurance protection to Ps, constituted a compensatory "split-dollar" life insurance arrangement under sec. 1.61-22, Income Tax Regs.  <u>De Los Santos v. Commissioner</u>, T.C. Memo. 2018-155.  Ps are thus taxable on the economic benefits they realized by participating in the plan.  Sec. 1.61-22(d)(1), Income Tax Regs.  In the notice of deficiency issued to Ps, R determined that these economic benefits are taxable to Ps as ordinary compensation income.

Ps filed a motion for partial summary judgment contending that, because P-H is a shareholder of the S corporation, the economic benefits he realized are taxable to him as a distribution under I.R.C.

sec. 301.  Citing sec. 1.301-1(q)(1)(i), Income Tax Regs., Ps contend that economic benefits received by a shareholder pursuant to a split-dollar life insurance arrangement constitute a distribution under I.R.C. sec. 301 regardless of whether the taxpayer receives the benefits in his capacity as an employee or as a shareholder.  In support of this position Ps rely on Machacek v. Commissioner, 906 F.3d 429 (6th Cir. 2018), rev'g and remanding T.C. Memo. 2016-55.

Held:  Because the compensatory split-dollar life insurance arrangement afforded benefits to P-H in his capacity as an employee of the S corporation, such benefits may not be characterized as a distribution "by a corporation to a shareholder with respect to its stock."  See I.R.C. sec. 301(a).

Held, further, for purposes of taxing employee fringe benefits, P-H is treated as a partner of a partnership.  See I.R.C. sec. 1372.  The economic benefits he realized are therefore taxable under I.R.C. sec. 707(c) as "guaranteed payments" and thus as ordinary income.

David M. Henderson, for petitioners.

David Conrad, David Weiner, and Mayer Y. Silber, for respondent.

OPINION

LAUBER, Judge:  This case involves an S corporation that adopted an employee welfare benefit plan for petitioners and four rank-and-file employees. We have ruled that petitioners' participation in this plan constituted a compensatory "split-dollar" life insurance arrangement under section 1.61-22(b), Income

Tax Regs., and that the economic benefits that flowed to petitioners generated current taxable income.[1]  De Los Santos v. Commissioner (De Los Santos I), T.C. Memo. 2018-155.  We left for further proceedings the computation of the exact amounts to be included in petitioners' gross income for each year.

On May 14, 2019, petitioners filed a second motion for partial summary judgment directed to the latter question.  They assert that the economic benefits at issue are taxable to petitioner husband as distributions under section 301 because he is a shareholder of the S corporation.  Respondent opposes petitioners' motion, contending that the economic benefits are taxable as ordinary income because the split-dollar arrangement was a "compensatory arrangement" that afforded benefits to petitioner husband in his capacity as an employee.  Concluding that respondent has the better side of this argument, we will deny petitioners' motion.

Background

The following facts are drawn from the parties' motion papers, the stipulation of facts, and the attached exhibits.  Petitioners resided in Texas when they petitioned this Court.  Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Fifth Circuit.  See sec. 7482(b)(1)(A).

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

Petitioner husband is a medical doctor. During 2011 and 2012 he was the sole shareholder of Dr. Ruben De Los Santos MD, PA, an S corporation organized in Texas (S Corp.). The S Corp. employed petitioner husband and petitioner wife, who served as the office manager for the medical practice, as well as four other individuals. Petitioners received annual salaries of $216,000 and $54,000, respectively. Petitioner husband also included in his income, as the sole shareholder of the S Corp., 100% of its items of income and expense. See sec. 1366.

In 2006 the S Corp. adopted an employee welfare benefit plan to provide its employees with life insurance and other benefits. The S Corp. selected the Legacy Employee Welfare Benefit Plan (Legacy Plan), which was funded by employer contributions to the Legacy Employee Welfare Benefit Trust (Trust).[2] The S Corp. participated in the Legacy Plan by agreeing to the terms of a "master plan document," which described the Legacy Plan as a "multiple employer welfare benefit plan" under section 419A(f)(6). To be eligible to receive benefits a person was required to "provide[] services to an Employer." Petitioners were "eligible employees" under the Legacy Plan because they provided services to the S Corp.

---

[2]In December 2010 the Legacy Plan was merged into the Legacy Employee Flex Benefit Plan, but the operative provisions remained substantially the same. For convenience we will refer to these entities collectively as the Legacy Plan.

Under the Legacy Plan as adopted by the S Corp., petitioners were entitled to a $12.5 million death benefit, and the four rank-and-file employees were entitled to a $10,000 death benefit and certain flexible benefits. To fund the promised death benefits the Legacy Plan required the purchase of life insurance. The Trust accordingly purchased a life insurance policy (Policy) insuring petitioners' lives. The Policy was a "flexible premium variable universal life" policy with accumulation values based on the investment experience of a separate fund. The Policy provided base insurance coverage of $12.5 million, equal to the death benefit that the S Corp. had selected for petitioners. The Policy was a "survivor policy," under which the insurer would pay $12.5 million to the Trust when the second of petitioners died. The Trust in turn was required to pay $12.5 million to whatever beneficiaries petitioners had designated.

During 2006-2010 the S Corp. paid $1,862,349 to the Trust, treating these contributions as tax-deductible expenses of the medical practice. These contributions were sufficient to fund the $12.5 million death benefit promised to petitioners. During 2007-2012 the Trust paid aggregate premiums of $884,534 on the Policy. Because of these premium payments and the investment gains thereon, the "accumulation value" of the Policy was $640,358 at year-end 2011 and $744,460 at year-end 2012.

Petitioners timely filed joint Federal income tax returns for 2011 and 2012. They did not report on these returns any income related to their participation in the Legacy Plan. On December 4, 2015, the IRS issued petitioners a timely notice of deficiency, determining that the economic benefits they received under the Legacy Plan were currently taxable to them as ordinary income. Petitioners timely petitioned this Court for redetermination.

In 2017 the parties filed cross-motions for partial summary judgment on the question whether petitioners' participation in the Legacy Plan constituted a "split-dollar life insurance arrangement" under section 1.61-22(b)(2), Income Tax Regs. Respondent contended that the S Corp. had adopted a "compensatory" split-dollar arrangement because the Legacy Plan was "entered into in connection with the performance of services." See id. subdiv. (ii)(A). Petitioners "concede[d] that * * * [the S Corp.] did provide welfare benefits to * * * [them] in exchange for the performance of services," and they acknowledged that their eligibility to receive benefits "was based solely on factors related to employment." But they asserted that the arrangement did not meet other requirements of the regulations. See id. subdiv. (ii)(B) and (C).

Agreeing with respondent, we held that the benefit plan constituted a compensatory split-dollar life insurance arrangement and that the economic benefits

flowing to petitioners therefrom generated current taxable income.  <u>De Los Santos I</u>, T.C. Memo. 2018-155.  We left for further proceedings the computation of the exact amounts to be included in petitioners' gross income for each year, as well as a determination as to their liability for penalties.  Petitioners have filed a second motion for partial summary judgment directed to the gross income question.

Discussion

I.      <u>Summary Judgment Standard</u>

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  <u>See</u> <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C. 73, 74 (2001).  We may grant summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law.  Rule 121(b); <u>Elec. Arts, Inc. & Subs. v. Commissioner</u>, 118 T.C. 226, 238 (2002).  The sole question presented at this stage of the proceedings is whether the economic benefits that petitioner husband received from the compensatory split-dollar life insurance arrangement are taxable as ordinary income or as a distribution under section 301.  The parties agree on all material facts relevant to this issue, and we conclude that it may be adjudicated summarily.

II.    Analysis

    A.    Taxation of Split-Dollar Life Insurance Arrangements

In 2003 the Department of the Treasury (Treasury) issued final regulations addressing the taxation of split-dollar life insurance arrangements.  T.D. 9092, 2003-2 C.B. 1055.  Split-dollar life insurance arrangements of the sort involved here fall into one of two categories--"compensatory arrangements" or "shareholder arrangements."  Sec. 1.61-22(b)(2)(ii) and (iii), Income Tax Regs.  In both types the "owner" of the life insurance contract pays the premiums, and the "non-owner" has a current interest in the policy.

The difference between these two types of arrangements is the underlying economic relationship.  In a "compensatory arrangement," the arrangement "is entered into in connection with the performance of services" by a service provider for a service recipient.  Id. subdiv. (ii)(A).  In a "shareholder arrangement," the arrangement "is entered into between a corporation and another person in that person's capacity as a shareholder in the corporation."  Id. subdiv. (iii)(A).

In the case of any split-dollar arrangement, "economic benefits are treated as being provided to the non-owner of the life insurance contract," and the non-owner "must take into account the full value of all economic benefits," less any consideration paid therefor.  Id. para. (d)(1).  "Depending on the relationship be-

tween the owner and the non-owner, the economic benefits may constitute a payment of compensation, a distribution under section 301," or a transfer having some other tax character. Ibid. This means that economic benefits under a "compensatory arrangement" will generally constitute the payment of compensation to the service provider, and economic benefits under a "shareholder arrangement" will generally constitute a distribution to the shareholder. See Our Country Home Enters., Inc. v. Commissioner, 145 T.C. 1, 51 (2015) (ruling that a corporation's provision of economic benefits to its shareholder-employee under a compensatory arrangement "generally is deemed to be the payment of compensation").

B.    Analysis

For purposes of their current motion, petitioners do not dispute that the life insurance arrangement at issue is a "compensatory arrangement." They have conceded that the S Corp. provided them with death benefits "in exchange for the performance of services," and they have acknowledged that their eligibility to receive these benefits "was based solely on factors related to employment." They have consistently characterized the benefits provided by the Legacy Plan to all six employees of the S Corp. as employee benefits. Indeed, in their first motion they argued (unsuccessfully) that the life insurance coverage they received was part of a "group-term life insurance plan." Cf. sec. 1.61-22(b)(2)(ii)(A), Income Tax

Regs. For all these reasons, as we have previously held, the arrangement was necessarily a "compensatory arrangement." De Los Santos I, 116 T.C.M. (CCH) 304, 308.[3]

It would seem logical that the benefits a person receives under a compensatory arrangement are in the nature of compensation. But petitioners contend that, "where a shareholder receives economic benefits from a split-dollar life insurance arrangement, * * * those benefits [must] be treated as a distribution of property." In petitioners' view, such benefits constitute corporate distributions under section 301 even if the benefits are received in exchange for services performed by an employee in his capacity as an employee.

Section 301 governs distributions of property by a corporation to its shareholders.[4] Not all payments from a corporation to a shareholder, however, consti-

_____

[3]Petitioners in any event would have great difficulty disputing the compensatory character of the life insurance arrangement under the "law of the case" doctrine. See Arizona v. California, 460 U.S. 605, 618 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

[4]Sec. 1368 provides special rules governing the tax treatment of shareholders who receive distributions from S corporations. However, the question whether a payment is a "distribution" to begin with is the same for C and S corporations. See sec. 1368(a) ("A distribution of property made by an S corporation with respect to its stock to which (but for this section) section 301(c) would apply shall be treated in the manner provided in subsection (b) or (c)[.]").

tute "distributions" within the ambit of section 301. Rather, section 301(a) requires that the transfer be made "by a corporation to a shareholder with respect to its stock." The phrase "with respect to its stock" means that the distributee must receive the payment in his capacity as a shareholder. "Section 301 is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such." Sec. 1.301-1(c), Income Tax Regs.

Accordingly, a payment is not a "distribution" if the shareholder receives it in his capacity as a creditor of the corporation. See Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1242 (5th Cir. 1978). Nor is a payment a "distribution" if the shareholder receives it in his capacity as an employee of the corporation. See Haber v. Commissioner, 52 T.C. 255, 268 (1969), aff'd per curiam, 422 F.2d 198 (5th Cir. 1970). "These transfers are not made with respect to stock because, if not for the obvious reason that the shareholder's standing as a shareholder is incidental, the corporation receives equal value in return (discharge of debt [or] services rendered * * * )." Boris I. Bittker & James S. Eustice, Federal Income Taxation of Corporations & Shareholders, para. 8.06, at *1 (2020), Westlaw FTXCORP.

Petitioner husband is a medical doctor who owns his own practice. During 2011 and 2012 the S Corp. paid him an annual salary of $216,000; it also provided

him and its other employees with various welfare benefits, including death benefits and flexible benefits. Petitioners concede that the S Corp. provided these benefits "in connection with the performance of services" and that their eligibility to receive such benefits "was based solely on factors related to employment."

Petitioner husband does not contend that his annual salary qualifies as a "distribution" covered by section 301. And he could not plausibly contend that welfare benefits generally, when received by a shareholder in exchange for the performance of services, should be treated as "distributions" covered by section 301. That being so, it is hard to see why split-dollar insurance benefits, when received by a shareholder in exchange for the performance of services, should be subject to a different rule.

Petitioners concede that the split-dollar arrangement was "entered into in connection with the performance of services." Sec. 1.61-22(b)(2)(ii)(A), Income Tax Regs. By definition, therefore, it was not a "shareholder arrangement," viz., an arrangement "entered into between a corporation and another person in that person's capacity as a shareholder in the corporation." Id. subdiv. (iii)(A). Because the economic benefits of life insurance coverage were not "paid by a corporation to a shareholder * * * in his capacity as such," sec. 1.301-1(c), Income Tax Regs., section 301 has no application here.

Petitioners' argument in support of a contrary conclusion rests on Machacek v. Commissioner, 906 F.3d 429 (6th Cir. 2018), rev'g and remanding T.C. Memo. 2016-55. That case involved married taxpayers who owned all the stock of their employer, an S corporation. 111 T.C.M. (CCH) 1249, 1250. In addition to paying wages to the taxpayers, the S corporation provided them with life insurance benefits in exchange for performing services. Ibid. We ruled that the S corporation's employee benefit plan constituted a compensatory split-dollar life insurance arrangement. Id. at 1257. We held that the taxpayers received economic benefits from the arrangement and that these benefits were taxable to them as ordinary income. Id. at 1258. That holding was consistent with Our Country Home Enterprises, 145 T.C. at 51, in which we reasoned: "Where, as here, the arrangement underlying the split-dollar life insurance arrangement is a 'compensatory arrangement' within the meaning of the applicable regulations, an employer's provision of the economic benefits to its employees generally is deemed to be the payment of compensation."

On appeal the taxpayers reiterated the arguments they had advanced in our Court, including a challenge to the validity of the split-dollar regulations. They also raised a new argument, namely, that the economic benefits flowing from the compensatory arrangement, if taxable at all, were taxable as distributions under

section 301.  As support for that theory they cited section 1.301-1(q)(1)(i), Income Tax Regs.  Neither party had mentioned that regulation in our Court, and we did not address it in our opinion.  Although the Sixth Circuit rarely entertains issues not raised below, see United States v. Means, 133 F.3d 444, 447 (6th Cir. 1998), it elected to consider the taxpayers' new argument "given its importance in this scenario," Machacek, 906 F.3d at 436.

Section 1.301-1(q), Income Tax Regs., is captioned "Split-dollar and other life insurance arrangements."  Paragraph (q)(1)(i) provides:  "The provision by a corporation to its shareholder pursuant to a split-dollar life insurance arrangement, as defined in § 1.61-22(b)(1) or (2), of economic benefits described in § 1.61-22(d) * * * is treated as a distribution of property."  The Sixth Circuit emphasized that the cross-reference to section 1.61-22(b), Income Tax Regs., covers the entire universe of split-dollar arrangements, including both "compensatory arrangements" (defined in paragraph (b)(2)(ii)) and "shareholder arrangements" (defined in paragraph (b)(2)(iii)).  See Machacek, 906 F.3d at 436.

Concluding that the cross-reference in section 1.301-1(q)(1)(i), Income Tax Regs., includes "any split-dollar arrangement," the Sixth Circuit held that this regulation "is dispositive and renders irrelevant whether * * * [the taxpayers] received the economic benefits through a compensatory or shareholder split-dollar

arrangement." Ibid. The court acknowledged that the regulations generally provide that section 301 "is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such." Ibid. (quoting section 1.301-1(c), Income Tax Regs.). But it concluded that this general rule must yield to section 1.301-1(q)(1)(i), Income Tax Regs., as a more specific provision that sets forth an "explicit inclusion * * * of all arrangements described in § 1.61-22(b)(2)." Ibid.

In November 2018 the Government filed a petition for panel rehearing, urging that the Sixth Circuit had interpreted section 1.301-1(q)(1)(i), Income Tax Regs., "in a manner that is fundamentally inconsistent with" section 301(a). Appellee's Pet. for Panel Reh'g at 5, Machacek v. Commissioner, 906 F.3d 429 (6th Cir. 2018) (No. 17-1131), ECF No. 32. The Government contended that the panel's opinion "eviscerates the significant distinction * * * between compensation paid to employees and distributions of property made to shareholders with respect to their stockholdings." Ibid. According to the Government, the panel's opinion could lead to "unanticipated consequences," including possible termination of the employer's status as an S corporation. "[T]reating the economic benefits of the split-dollar arrangement as distributions to one shareholder * * * with no corresponding distributions to the other

shareholder * * * will cause the S corporation to have a second class of stock, and so will terminate its S corporation status and cause it to incur a separate corporate-level tax." Id. at 14. The Sixth Circuit denied the Government's petition for rehearing on December 9, 2020.

With all due respect, we are unable to embrace the reasoning or result of the Sixth Circuit's opinion in Machacek, and we are not bound to follow its opinion where (as here) the case is appealable to a different circuit. See Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). To adopt the Sixth Circuit's construction of section 1.301-1(q)(1)(i), Income Tax Regs., would require us to ignore the plain language of section 301(a), the statute under which the regulation was promulgated. We are not permitted to construe a regulation in a manner that ignores its governing statute or that adds to the statute "something which is not there." United States v. Calamaro, 354 U.S. 351, 359 (1957). If "[t]he plain language of a statute determines the meaning of the statute, * * * [we must] 'enforce it according to its terms.'" Progressive Corp. & Subs. v. United States, 970 F.2d 188, 191 (6th Cir. 1992) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).

Section 301, captioned "Distributions of property," unambiguously applies only to "a distribution of property * * * made by a corporation to a shareholder

with respect to its stock." Sec. 301(a). If a corporation makes a payment other than with respect to its stock--e.g., to a shareholder in his capacity as an employee or a lender--the payment is outside the scope of section 301. See Loftin & Woodard, Inc., 577 F.2d at 1242 ("[W]hen an interest payment is made by a corporation to a stockholder, the court must decide whether the relationship of the stockholder to the corporation is one of creditor and debtor."). Because the statute is clear on this point, "we must apply it as written." See King Ranch, Inc. v. United States, 946 F.2d 35, 37 (5th Cir. 1991).

Nor can we interpret a regulation "to thwart the statutory mandate it was designed to implement." See Jochum v. Pico Credit Corp. of Westbank, Inc., 730 F.2d 1041, 1047 (5th Cir. 1984). Congress codified section 301(a) in the Internal Revenue Code of 1954, ch. 736, 68A Stat. at 84. This provision, Congress explained, "has applicability only to distributions of property to shareholders in their capacity as such." S. Rept. No. 83-1622, at 231 (1954), 1954 U.S.C.C.A.N. 4621, 4868. "For example, a distribution of property to a shareholder who is a creditor of the corporation in satisfaction of his claim against the corporation is not within the scope of section 301." Ibid.

The regulations issued under section 301 must (and can) be interpreted to be consistent with this statutory mandate. Section 1.301-1(a) describes the statute as

setting forth "the general rule for treatment of distributions * * * by a corporation to a shareholder with respect to its stock." Section 1.301-1(c) states that "[s]ection 301 is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such."

These general rules, unambiguously stated at the outset of the section 301 regulations, necessarily apply to (and limit) the subsequent, more granular provisions. Those subsequent provisions often refer to "distributions to shareholders" or "property transferred by a corporation to a shareholder," without explicitly saying--each and every time--that the distribution or transfer is being made to the shareholder "in his capacity as such."[5] But there was no need for Treasury to

---

[5]See, e.g., sec. 1.301-1(b), Income Tax Regs. (specifying time for inclusion in gross income of "[a] distribution made by a corporation to its shareholders," without specifically stating that the distribution was made to shareholders in their capacity as such); id. para. (d)(3) (specifying consequences for "a distribution of property * * * by a foreign corporation to a shareholder," without specifically stating that the distribution was made to the shareholder in its capacity as such); id. para. (f), Examples (1), (2), and (3) (specifying consequences of various distributions to stockholders, without specifically stating that the distributions were made to them in their capacity as such); id. para. (j) (specifying consequences where "property is transferred by a corporation to a shareholder which is not a corporation for an amount less than its fair market value in a sale or exchange," without specifically stating that the distribution was made to a shareholder in his capacity as such); id. para. (m) (providing that "[t]he cancellation of indebtedness of a shareholder by a corporation shall be treated as a distribution of property," without specifically stating that this benefit is conferred on the shareholder in his capacity as such).

include that verbiage in these more granular provisions because the general rules stated at the outset limit the scope of the regulations to distributions by a corporation with respect to its stock.

The same analysis applies to section 1.301-1(q)(1)(i), Income Tax Regs. It says that "[t]he provision by a corporation to its shareholder pursuant to a split-dollar life insurance arrangement * * * of economic benefits * * * is treated as a distribution of property." Ibid. This sentence necessarily applies only to the pro-vision of economic benefits to a shareholder "in his capacity as such," because that is the only type of transfer to which section 301 applies. Interpreting "sharehold-er" to mean "shareholder in his capacity as such"--when used here and in compa-rable paragraphs of the regulation--is not only justified but is required by the statutory text and by the regulation's introductory provisions.[6]

When proposing and finalizing the split-dollar regulations, Treasury made clear that the manner in which economic benefits are taxed depends on whether

_____

[6]The Sixth Circuit suggested that there was "no alternative interpretation that gives meaning to the inclusion of compensatory arrangements in § 1.301-1(q)(1)(i)." Machacek, 906 F.3d at 436. Again we respectfully disagree. The "alternative interpretation" that renders this provision consistent with the statute and the rest of the regulation is to interpret "to its shareholder," as used in sec. 1.301-1(q)(1)(i), to mean "to its shareholder in his capacity as such." That is the clear meaning of this phrase throughout sec. 1.301-1, Income Tax Regs. See supra note 5.

the arrangement is a compensatory arrangement or a shareholder arrangement. "[I]f the arrangement were in a compensatory context," Treasury advised, "the employee * * * would account for the amount as compensation." Sec. 1.61-22, Proposed Income Tax Regs., 67 Fed. Reg. 45417 (July 9, 2002). The final regulations similarly state that the manner in which economic benefits are taxed "[d]epend[s] on the relationship between the owner and the non-owner." Sec. 1.61-22(d)(1), Income Tax Regs. Depending on the capacity in which the non-owner receives the transfer, it "may constitute a payment of compensation, a distribution under section 301, a contribution to capital, a gift, or a transfer having a different tax character." Ibid. Under the Sixth Circuit's approach in Machacek, economic benefits received by a shareholder would invariably constitute a distribution under section 301, regardless of the relationship that accounts for the payment. We are unable to reconcile that approach either with the text of section 301(a) or with the split-dollar regulations.

Notably, the split-dollar regulations govern the taxation of such arrangements, not only for income and gift tax purposes, but also for employment tax purposes. See sec. 1.61-22(a)(1), Income Tax Regs. ("This section provides rules for the taxation of a split-dollar life insurance arrangement for purposes of * * * the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax

Act (FUTA), * * * and the Self-Employment Contributions Act[.]"). It is well established that an S corporation "cannot avoid Federal employment taxes by characterizing compensation * * * as distributions of the corporation's net income." Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141, 145-146 (2001), aff'd sub nom. Yeagle Drywall Co. v. Commissioner, 54 F. App'x 100 (3d Cir. 2002).

But if a corporate employer could characterize benefits paid to employees under compensatory arrangements as section 301 "distributions," the employer could avoid paying a substantial amount of taxes that fund programs like Medicare and Social Security. An S corporation might even offer its rank-and-file employees a few shares of stock. By converting each employee into a "shareholder," the employer could avoid paying employment taxes on split-dollar insurance benefits, contrary to Treasury's evident purpose in promulgating these rules.

For these reasons, we conclude that the economic benefits received by petitioner husband under the split-dollar arrangement cannot be characterized as "distributions" under section 301. In the notice of deficiency respondent determined that these benefits, having been received under a compensatory arrangement, are taxable as "compensation for services" under section 61(a)(1) and thus as ordinary

income. Although we agree that the benefits are taxable as ordinary income, we think the path to that conclusion requires a few additional steps.

Subchapter S governs the tax treatment of S corporations and their shareholders. Section 1372, one of its provisions, is captioned "Partnership Rules to Apply for Fringe Benefit Purposes." Section 1372(a) provides that, "[f]or purposes of applying the provisions of this subtitle [viz., subtitle A, dealing with income taxes] which relate to employee fringe benefits--(1) the S corporation shall be treated as a partnership, and (2) any 2-percent shareholder of the S corporation shall be treated as a partner of such partnership." A "2-percent shareholder" is defined to include "any person who owns * * * more than 2 percent of the outstanding stock of such corporation." Sec. 1372(b).

In Our Country Home Enterprises, 145 T.C. at 51, we ruled that an employer's provision of economic benefits to its employees under a compensatory split-dollar arrangement "generally is deemed to be the payment of compensation." But we noted that this general rule is subject to an exception "where the employer is an S corporation that provides the benefits to a 2% shareholder in consideration for services rendered." Ibid. "In the case of such an S corporation," we reasoned, "the 2% shareholder is treated as a partner for purposes of applying the employee fringe benefit rules, the economic benefits are categorized as guaranteed payments

under section 707(c), and the 2% shareholder must recognize the amount of the guaranteed payments as gross income under section 61(a)." Ibid.; see Hurst v. Commissioner, 124 T.C. 16, 35 (2005) (treating an S corporation's payment of insurance premiums on behalf of a 2% shareholder as "guaranteed payments" under section 707(c)).

Petitioner husband owned 100% of the S Corp.'s stock at all relevant times. Under section 1372(a), the S Corp. is treated as a partnership, and he is treated as a partner, for purposes of determining the taxation of employee fringe benefits. The life insurance benefits petitioner husband received under the split-dollar arrangement are "employee fringe benefits" within the meaning of section 1372. Our Country Home Enters., Inc., 145 T.C. at 51; see Hurst, 124 T.C. at 35. Those economic benefits are thus taxed to petitioner husband as "guaranteed payments" under section 707(c) and hence as ordinary income under section 61.

Petitioners invite us to reconsider our ruling in Our Country Home Enterprises, 145 T.C. at 51, that split-dollar life insurance benefits are "fringe benefits" for purposes of section 1372. Petitioners note (correctly) that the term "fringe benefit" is not defined in section 1372 or elsewhere in the Code. In their view insurance benefits received by an employee under a split-dollar arrangement should be excluded from the ambit of this term.

We decline petitioners' invitation. The term "fringe benefit" is commonly understood to mean "any form of employee compensation provided in addition to wages or base salary, as a pension, insurance coverage, vacation time, etc." Webster's New World Collegiate Dictionary 568 (4th ed. 2010); see Black's Law Dictionary (11th ed. 2019) (defining "fringe benefit" as a "benefit (other than direct salary or compensation) received by an employee from an employer, such as insurance"); see also Internal Revenue Manual pt. 4.23.5.15(1) (Nov. 22, 2017) (defining "fringe benefit" as a benefit "that an employee receives in addition to regular taxable wages").

Although the term "fringe benefit" is not defined in the Code, all available evidence suggests that Congress intended to adopt the common understanding of this term, i.e., that a "fringe benefit" includes any employer-provided benefit that supplements an employee's salary, specifically including life insurance benefits. Because the Code "is broad enough to include in taxable income any * * * benefit conferred on the employee as compensation," Commissioner v. Smith, 324 U.S. 177, 181 (1945), any fringe benefit is taxable unless "excluded by § 132 or some other explicit exclusionary rule," Boris I. Bittker & Lawrence Lokken, Federal Taxation of Employee Compensation, para. 5.1, at *1 (2020), Westlaw WGL-COMP. Section 132, captioned "Certain fringe benefits," specifically excludes

from gross income eight types of fringe benefits, but split-dollar insurance benefits are not among those so excluded.

Congress codified section 1372 as part of the Subchapter S Revision Act of 1982 (Act), Pub. L. No. 97-354, 96 Stat. at 1682. In the section of the Act governing effective dates Congress provided that, in the case of "existing fringe benefits," section 1372 shall apply "only with respect to taxable years beginning after December 31, 1987." Act sec. 6(d)(1), 96 Stat. at 1699. Congress defined "existing fringe benefit" to mean "any employee fringe benefit of a type which the corporation provided to its employees as of September 28, 1982." Id. para. (3). By referring to "any employee fringe benefit," Congress evidently intended to give this term broad scope.

The Act's legislative history expressed Congress' understanding that "fringe benefits" within the meaning of section 1372 included various insurance benefits, such as death benefits, group term life insurance benefits, and benefits received under accident and health plans. See S. Rept. No. 97-640, at 22 (1982), 1982-2 C.B. 718, 728; H.R. Rept. No. 97-826, at 21 (1982), 1982-2 C.B. 730, 739. Both reports state, without exceptions, that "the treatment of fringe benefits of any person owning more than two percent of the stock of the corporation will be treated in the same manner as a partner in partnership." Ibid. Petitioners offer no plausible

explanation why the death benefits they received under the Legacy Plan, unlike all other employer-provided insurance benefits, should be excluded from "fringe benefits" that are subject to this rule.[7]

Besides pointing us to the correct technical analysis, section 1372 confirms the error of petitioners' reliance on section 1.301-1(q), Income Tax Regs.  For purposes of taxing the economic benefits at issue here, section 1372 requires that the S Corp. be treated as a partnership.  Although partnerships can distribute property, see secs. 731-737, they cannot make "distributions" covered by section 301, see sec. 301(a) (specifying taxability of distributions of property "made by a corporation to a shareholder").  The regulation on which petitioners rely accordingly has no application to this case.  See sec. 1.301-1(q)(1)(i), Income Tax Regs. (addressing the provision of economic benefits "by a corporation to its shareholder").  Thus, even if petitioners were correct in contending that split-dollar

---

[7]Notably, the IRS has consistently characterized split-dollar life insurance benefits as "fringe benefits" for purposes of subchapter S.  See Priv. Ltr. Rul. 200441023 (Oct. 8, 2004); Priv. Ltr. Rul. 9248019 (Nov. 27, 1992).  Petitioners seek to differentiate such benefits from other insurance benefits on the theory that "split-dollar arrangements represent more of a co-ownership of an asset for income tax purposes which benefits both parties."  This statement is factually incorrect, at least as applied to the Legacy Plan:  The Trust owned the Policy, and the S Corp. was simply deemed "the owner" for purposes of the split-dollar regulations.  See sec. 1.61-22(c)(1)(ii)(A)(1), Income Tax Regs.  In any event all employee benefit programs may be said to "benefit both parties."  Otherwise employers presumably would not offer them to their employees.

insurance benefits received by an employee-shareholder of a C corporation would necessarily be treated as a distribution under section 301, sections 1372 and 707(c) dictate that the result is different for an employee-shareholder of an S corporation who owns 2% or more of its stock.  These provisions therefore supply a distinct and independently sufficient basis for denying petitioners' motion for partial summary judgment.[8]

In consideration of the foregoing,

> An order will be issued denying petitioners' motion for partial summary judgment.

Reviewed by the Court.

FOLEY, GALE, GUSTAFSON, PARIS, MORRISON, KERRIGAN, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, TORO, GREAVES, MARSHALL, and WEILER, JJ., agree with this opinion of the Court.

---

[8]Although the employer in Machacek, 906 F.3d at 430, was an S corporation, the Sixth Circuit in its opinion did not address sec. 1372, and neither party appears to have brought that provision to the court's attention.